# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4636 | **DATE** | 2/3/2004 |
| **CASE TITLE** | Bors vs. Duberstein, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
 ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons stated in the Memorandum Opinion and Order, defendants' motion to dismiss [5-1] is granted. Plaintiff's complaint dismissed without prejudice. Plaintiff has 21 days from the entry of this order to file a first amended complaint. If no first amended complaint is filed by that time, case will be dismissed with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | FEB 0 5 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 10 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 2/3/2004 | |
| | | | date mailed notice | |
| MD | courtroom deputy's initials | | MD | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY BORS, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| vs. | ) No. 03 C 4636 <br> ) Judge Joan H. Lefkow |
| GARY K. DUBERSTEIN, ALFRED D. KINGSLEY, DAVID D. JONES, JR., and ANDREW P. HINES, | ) <br> ) <br> ) |
| Defendants. | ) <br> ) <br> ) |

**DOCKETED**

FEB 0 5 2004

## MEMORANDUM OPINION AND ORDER

On May 2, 2003, plaintiff, Kimberly Bors ("Bors"), filed suit against defendants, Gary K. Duberstein ("Duberstein"), Alfred D. Kingsley ("Kingsley"), David D. Jones Jr. ("Jones") and Andrew P. Hines ("Hines") (collectively "defendants"), in the Circuit Court of Cook County, Illinois, alleging state law claims of fraudulent misrepresentation (Count I) and tortious interference with contract (Count II). On July 3, 2003, Hines, with the consent of all other defendants, removed the case to this court on diversity of citizenship grounds. The notice of removal represents that Bors is a citizen of Illinois, Hines a citizen of New Jersey or South Carolina, Duberstein and Kingsley citizens of New York and Jones a citizen of Wisconsin. The notice of removal also alleges that the amount in controversy exceeds $75,000 in that Bors seeks damages in the amount of $180,000. Thus, this court's jurisdiction is invoked pursuant to 28 U.S.C. § 1332(a)(1). Before the court is the defendants' motion under Federal Rules of Civil Procedure 12(b)(6) and 9(b) to dismiss Bors' Complaint. For the reasons stated below, the motion is granted.

10

## MOTION TO DISMISS STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957); *Kennedy* v. *Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on the motion, the court accepts as true all well pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in favor of the plaintiff. *Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999); *Zemke* v. *City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996).

In addition to the mandates of Rule 12(b)(6), Federal Rule of Civil Procedure 9(b) requires "all averments of fraud" to be "stated with particularity," although "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." "The rule requires the plaintiff to state the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc.* v. *Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994); *see also DiLeo* v. *Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) ("Although states of mind may be pleaded generally [under Rule 9(b)], the 'circumstances' must be pleaded in detail. This means the who, what, when, where, and how: the first paragraph of any newspaper story.").

## BACKGROUND

According to Bors' Complaint, which is taken as true for purposes of this motion, Bors served as the vice-president of Human Resources for Outboard Marine Corporation ("OMC") from October 1995 through December 2000. (Compl. ¶ 2.) On January 17, 1996, Bors was granted 10,000 "phantom" shares of OMC stock based on an Executive Retention Incentive Plan ("ERIP") adopted in late 1995. (Compl. ¶¶ 8-9.) The shares were to vest over five years unless there was a change of control in OMC, at which point the shares would vest immediately. (Compl. ¶ 9.) If such a change occurred, OMC was required to purchase Bors' phantom shares, plus any dividend credits, at the price per share paid for the controlling interest in OMC. (*Id.*)

On September 12, 1997, Greenmarine Acquisition Corporation ("Greenmarine") gained control through a tender offer of OMC's common stock. (Compl. ¶ 10.) Greenmarine then merged with OMC, leaving OMC as the surviving company. (*Id.*) On September 30, 1997, all OMC common stock that was outstanding prior to the merger was cancelled and 20.4 million shares of new common stock was issued to Greenmarine Holdings LLC, Greenmarine's parent company. (*Id.*) Subsequently, OMC's directors and officers resigned. (Compl. ¶ 13.) Duberstein and Kingsley, who had indirect control of OMC through interest in Greenmarine Holdings LLC, replaced OMC's directors and senior officers and hired Jones as President and CEO and Hines as Executive Vice President and Chief Financial Officer. (*Id.*)

When this change in control occurred, Bors became fully vested in the 10,000 phantom shares of OMC stock, in addition 314.873 additional phantom shares that constituted dividend credits. (Compl. ¶ 12.) At this time Bors had the right to require OMC to pay her $18 for each of her shares. (*Id.*)

The Complaint alleges that rather than pay Bors for her phantom shares, Jones and Hines, at the direction of Duberstein and Kingsley, induced Bors to execute a Unit Grant Agreement under which Bors forfeited her right to payment for all but 314.873 of the phantom shares. (Compl. ¶ 14.) The Complaint alleges that the remaining phantom shares were transferred into 10,000 restricted shares of new OMC common stock. (Compl. ¶ 14.)

The Complaint further alleges that certain statements were used to induce Bors to transfer her right to the phantom shares. These statements included that

    a. OMC would pay her not less than $180,000, plus six percent interest compounded annually beginning on September 12, 1997, to repurchase her restricted shares upon termination of her employment.

    b. OMC's new ownership and management team expected all remaining ERIP phantom share recipient holders to rollover their phantom shares into new, restricted OMC shares to demonstrate commitment to the team. Refusal or reluctance to rollover the phantom shares would be viewed as showing a lack of commitment to the team, which could ultimately result in the loss of employment.

    c. OMC's new ownership and management team were providing ample time and resources to achieve a business turnaround at OMC, which was now free of the quarter-to-quarter financial results reporting it had as a publicly-held company.

    d. OMC's new ownership and management team was intensively reorganizing OMC's operational and management structure and making new capital investments to achieve long-needed manufacturing efficiencies, new technology for reducing emissions in boat engines, and resulting new boat engine products.

    e. OMC's new ownership and management team intended to take the company public again within five years at a target price of $50 per share, which would then make Bors' restricted shares worth $500,000.

(Compl. ¶ 15.)

Bors alleges that in making the above statements, Jones and Hines omitted facts that were material to Bors' decision to give up her right to payment for the phantom shares. These omissions included that:

4

> a. OMC was severely strapped for cash because, among other reasons, the individuals controlling it had caused it to assume a $150 million loan which had been used to finance the tender offer and would become due on or about June 16, 1998–well before OMC would have adequate cash reserves to repay or refinance the loan.
> b. Additional cash was not readily available due to the restrictiveness of the bank covenants on [] OMC's revolving working capital credit line.
> c. OMC would be insolvent unless it could raise several hundred million[] . . . dollars in new financing.
> d. OMC's financial statements for fiscal years 1997 and 1998 materially understated OMC's 1997 financial performance and materially overstated 1998 financial performance–giving OMC the false appearance of materially improving financial performance–and, due to SEC pressure, had to be restated, thus negatively affecting OMC's ability to achieve additional financing.
> e. OMC was unable to overcome the problems in implementing new emissions reducing technology for its engines, which it needed to develop new boat engine products and regain market share.
> f. As a result of the foregoing, defendants had no intentions of performing the obligations imposed under the ERIP for non-terminating employees.

(Compl. ¶ 16.)

In December 2000, OMC declared bankruptcy. (Compl. ¶ 21.) This rendered Bors' restrictive shares obtained in lieu of payment on the phantom shares worthless. (*Id.*)

## DISCUSSION

### A. Fraudulent Misrepresentation (Count I)

Defendants seek dismissal of Bors' Count I fraudulent misrepresentation claim on grounds that Bors has not pled fraud with the level of particularity required by Rule 9(b). On review of the allegations in Bors' Complaint, the court agrees. As noted above, to satisfy the requirements of Rule 9(b) Bors was required to plead the "who, what, when, where, and how" of the alleged fraud. *Uni\*Quality, Inc. v. Infortronz, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992). Bors' Complaint omits numerous aspects of the above elements. It only asserts that "Jones and Hines"

5

induced her to give up her shares and that they did this "at the direction of Duberstein and Kingsley." Moreover, it provides only the very general time frame of September 1997 until May 1998 as to when these statements were made. But this almost eight-month time period can hardly be thought to satisfy the heightened pleading standard imposed by Rule 9(b), particularly when that is the entire span of time between the relevant events.[1] Nor does Bors specify approximately when each particular statement was made to her as would be contemplated by a rule that requires fraud to be pled with particularity. The Complaint also fails to mention where the statements were communicated to her or how in fact the defendants communicated the statements.

Bors cites *Talton v. Unisource Network Services, Inc.*, No. 00 C 7967, 2001 WL 1035732 (N.D. Ill. Sept. 10, 2001), in support of her Complaint, but *Talton* very aptly demonstrates why Bors has not pled fraud with the required level of particularity. In *Talton* the court concluded that a securities fraud claim survived the heightened pleading standards of Rule 9(b) because it alleged that two defendants (Collins and Doerer) (the "who") assured the plaintiff in person that she would remain CEO of a company (the "what" and "how") on January 17, 2000 (the "when") at a closing for interim financing of the company (the "where"). *Id.* at *6. The complaint also specified that Collins and Doerer represented to the plaintiff at meetings on January 17, 2000 and February 22, 2000 that her continued position as an executive with the company was critical to the success of the company (once again satisfying the who, what, when, where, and how). While Bors may analogize her theory of recovery with that in *Talton*, she most clearly has not pled

---

[1] OMC was acquired by Greenmarine on September 12, 1997. Bors signed the Unit Grant Agreement on May 4, 1998.

6

fraud with the particularity the plaintiff did in that case. Accordingly, because Bors has not sufficiently alleged fraud with particularity, her Count I claim for fraudulent misrepresentation must be dismissed without prejudice.

**B.     Tortious Interference With Contract (Count II)**

Under Illinois law, the elements of a tortious interference with contract claim are "(1) the existence of a valid and enforceable contract between the plaintiff and a third party; (2) the defendant's awareness of the contractual relationship; (3) the defendant's intentional and unjustified inducement of a breach of contract; (4) a subsequent breach by the third party caused by the defendant's wrongful conduct; and (5) damages resulting from the breach." *Wheel Masters Inc.* v. *Jiffy Metal Prods. Co.*, 955 F.2d 1126, 1129 (7th Cir. 1992); *George A. Fuller Co.* v. *Chicago Coll. of Osteopathic Med.*, 719 F.2d 1326, 1330 (7th Cir. 1983). While there is no dispute that Bors has sufficiently alleged the existence of a valid and enforceable contract between her and OMC and that defendants were aware of this relationship, nevertheless, Bors' claim is problematic for several reasons.

First, Bors does not actually allege that there was any breach of a contract. The contract at issue concerns Bors' right to repurchase 10,000 phantom shares from OMC. Based on what Bors has pled in her Complaint, there was never a breach of that contract. Rather she had the contractual right to require OMC to repurchase 10,000 phantom shares of OMC stock. Based on allegedly fraudulent statements by defendants, Bors did not exercise that option. Thus, Bors does not allege any breach of the contract between her and OMC. Instead, her allegations (assuming that they properly alleged fraud) would provide support only for the notion that she was fraudulently induced not to exercise rights under a contract.

7

In addition, as defendants point out, the actions Bors complains of in her Complaint were directed at her, not OMC, the third party. *See George A. Fuller Co.*, 719 F.2d at 1331 ("Under Illinois law, liability for tortious interference may only be premised on acts immediately directed at a third party which cause that party to breach its contract with the plaintiff."). As one Illinois Appellate Court stated in a similar situation where the alleged acts of interference were directed toward the plaintiff and not a third party, "inducement to breach contract involves acts aimed at parties other than a plaintiff. Those acts, in turn, cause those parties to breach a contract held by that plaintiff." *Mitchell v. Weiger*, 87 Ill. App. 3d 302, 305, 409 N.E. 2d 38, 41 (1980). Bors' Complaint only alleges facts illustrating that the acts of alleged inducement were directed at her and not OMC. Thus, this Count is also properly dismissed.

## CONCLUSION

Accordingly, for the reasons stated above, defendants' motion to dismiss is granted [#5]. Bors' Complaint is dismissed without prejudice. Bors has 21 days from the entry of this order to file a First Amended Complaint. If no First Amended Complaint is filed by that time, this case will be dismissed with prejudice.

Enter: *[signature]*
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: February 3, 2004