# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4636 | **DATE** | 7/14/2004 |
| **CASE TITLE** | Bors vs. Duberstein, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons stated in the Memorandum Opinion and Order, defendants' motion to dismiss [#15] is granted. Plaintiff's amended complaint is dismissed with prejudice. Case is terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JUL 15 2004 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | 22 |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 7/14/2004 date mailed notice | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD mailing deputy initials | |

| | |
|---|---|
| KIMBERLY BORS, <br><br> Plaintiff, <br><br> vs. <br><br> GARY K. DUBERSTEIN, ALFRED D. KINGSLEY, DAVID D. JONES, JR., and ANDREW P. HINES, <br><br> Defendants. | No. 03 C 4636 <br> Judge Joan H. Lefkow <br><br> **DOCKETED** <br> JUL 1 5 2004 |

## MEMORANDUM OPINION AND ORDER

On May 2, 2003, plaintiff, Kimberly Bors ("Bors"), filed suit against defendants, Gary K. Duberstein ("Duberstein"), Alfred D. Kingsley ("Kingsley"), David D. Jones, Jr. ("Jones"), and Andrew P. Hines ("Hines") (collectively "defendants"), in the Circuit Court of Cook County, Illinois, alleging state law claims of fraudulent misrepresentation and tortious interference with a contract. On July 3, 2003, and with the consent of all other defendants, Hines removed the case to this court on diversity of citizenship grounds. The notice of removal represents that Bors is a citizen of Illinois, Duberstein and Kingsley are citizens of New York, Jones is a citizen of Wisconsin and Hines is a citizen of either New Jersey or South Carolina. The notice of removal also alleges an amount in controversy exceeding $75,000 in that Bors claims damages in the amount of $180,000. Thus, this court's jurisdiction is invoked pursuant to 28 U.S.C. § 1332 (a)(1).

On February 5, 2003, this court granted the defendants' motion to dismiss Bors' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) without prejudice.

Bors then filed an Amended Complaint on March 16, 2004, alleging only a state law claim of fraudulent misrepresentation. Before the court is the defendants' motion to dismiss Bors' Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). For the reasons stated below, the motion is granted.

## MOTION TO DISMISS STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); *Kennedy v. Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on the motion, the court accepts as true all well pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in favor of the plaintiff. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999); *Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996).

In addition to the mandates of Rule 12(b)(6), Federal Rule of Civil Procedure 9(b) requires "all averments of fraud" to be "stated with particularity," although "malice, intent, knowledge, and other condition of mind of a person may be averred generally." "The rule requires the plaintiff to state the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994); *see also DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) ("Although

2

states of mind may be pleaded generally [under Rule 9(b)], the 'circumstances' must be pleaded in detail. This means the who, what, when, where, and how: the first paragraph of any newspaper story.").

**BACKGROUND**

According to Bors' Amended Complaint, which is taken as true for purposes of this motion, Bors was an employee of Outboard Marine Corporation ("OMC") from October 1995 through December 2000. (Am. Compl. ¶ 2.) She held several successively higher positions with OMC, including Vice-President of Human Resources and President of OMC's Chris-Craft boat operation. (*Id.*) On January 17, 1996, Bors was granted 10,000 "phantom" shares of OMC stock based on an Executive Retention Incentive Plan ("ERIP") adopted in late 1995. (Am. Compl. ¶¶ 8-9.) The shares were to vest over five years unless there was a change of control in OMC, at which point the shares would vest immediately. (Am. Compl. ¶ 9.) If such a change occurred, OMC was required to purchase Bors' phantom shares, plus any dividend credits, at the price per share paid for the controlling interest in OMC. (*Id.*)

On September 12, 1997, Greenmarine Acquisition Corporation ("Greenmarine") gained control through a tender offer of OMC's common stock. (Am. Compl. ¶ 10.) Greenmarine then merged with OMC, leaving OMC as the surviving company. (*Id.*) On September 30, 1997, all OMC common stock that was outstanding prior to the merger was cancelled and 20.4 million shares of new common stock were issued to Greenmarine Holdings LLC, Greenmarine's parent company. (Am. Compl. ¶ 12.) Subsequently, OMC's directors and officers resigned. (Am. Compl. ¶ 11.) Duberstein and Kingsley, who had indirect control of OMC through their interests

3

in Greenmarine Holdings, replaced OMC's directors and senior officers and hired Jones as President and CEO and Hines as Executive Vice President and Chief Financial Officer. (*Id.*)

When this change in control occurred, Bors became fully vested in the 10,000 phantom shares of OMC stock, in addition to 314.873 additional phantom shares that constituted dividend credits. (Am. Compl. ¶ 13.) At this time OMC became obligated, under the terms of the ERIP, to repurchase Bors' shares at $18 per share. (*Id.*)

The Amended Complaint alleges that the defendants sought to prevent OMC from repurchasing any phantom shares that it was now obligated to repurchase under the terms of the ERIP. (Am. Compl. ¶¶ 14, 15, 17.) Specifically, Duberstein called Bors on September 18, 1997 and again on October 1, 1997 and directed her not to process any payments for the phantom shares until further notice. (Am. Compl. ¶ 14.) This message was reiterated to Bors on October 7, 1997 by OMC's newly-appointed General Counsel, Robert Romano. (Am. Compl. ¶ 15.) Furthermore, on October 13, 1997, when Bors told Duberstein that other executives had been asking her when payments for the phantom shares would be made, Duberstein simply asked her which executives had inquired and asked Bors if they were committed to the company. (Am. Compl. ¶ 17.)

On December 16, 1997, Duberstein announced to Bors that the defendants had a plan to roll the phantom shares of the ERIP participants into restricted shares of the new OMC stock on a tax-free basis. (Am. Compl. ¶ 20.) In January of 1998, Jones told Bors multiple times that he expected her to get all the ERIP participants to roll over their phantom shares into the new restricted shares. (Am. Compl. ¶ 21.) When Bors responded that the OMC executives viewed the new management as not acting in good faith because they had not made a cash payment for

4

the phantom shares, Jones told her that "[the executives] needed to get on the train or get run over by it." (*Id.*) Bors viewed Jones' statement to be a threat that if she did not agree to roll over her phantom shares her career would be in jeopardy. (*Id.*) When Bors asked Duberstein on February 17, 1998, if there was any alternative to the plan to roll over the phantom shares, Duberstein's only response was that he wanted to know if anyone showed reluctance to roll over their phantom shares. (Am. Compl. ¶ 25.) Furthermore, on or about March 31, 1998, Jones and Hines told Bors that any failure to agree to roll over her phantom shares would indicate a lack of commitment to the new OMC management. (Am. Compl. ¶ 27.)

The Amended Complaint further alleges that the defendants made several statements to induce Bors to execute a Unit Grant Agreement ("UGA"), rolling over her phantom shares. On December 16, 1997, Duberstein told Bors over the phone that the rollover would be a "big win" for all participants because they would receive future appreciation of OMC stock on a tax-advantaged basis. (Am. Compl. ¶ 20.) On October 17, 1997, Hines told Bors that all OMC executives could make a lot of money in OMC's turnaround and that OMC had the stable financial support for such a turnaround due to Greenmarine Holdings' strong backing. (Am. Compl. ¶ 18.) On February 3, 1998, Jones and Hines, at an executive staff meeting, described the developing turnaround plan for OMC. (Am. Comp. ¶ 22-23.) They told Bors and others that, as a private corporation, OMC would be free of the financial pressures that it had as a publicly traded one. (*Id.*) At the meeting, Jones and Hines further stated that OMC would be given enough cash and time to become more efficient, reduce boat engine emissions to meet new government requirements and to develop new boat engine products. (*Id.*) They told Bors the turnaround would occur over five years and culminate in an initial public stock offering at $50 or

more per share. (*Id.*) Bors alleges that Jones and Hines made the statements at the February 3 meeting at the direction of Duberstein and Kingsley in order to induce the ERIP participants to accept restricted shares of the new OMC stock rather than cash. (Am. Compl. ¶ 24.)

Bors alleges that in making the above statements, the defendants, jointly and severally, omitted facts that were material to Bors' decision to give up her right to payment for the phantom shares and instead roll them into restricted shares of the new OMC stock. These omissions included that:

> a. OMC was severely strapped for cash because, among other reasons, Duberstein and Kingsley had caused it to assume a $ 150 million loan that had been used to finance the tender offer, which was then replaced by the obligation to repay senior promissory notes.
> b. Additional cash was not readily available due to the restrictiveness of the bank covenants on OMC's revolving working capital credit line.
> c. OMC would be insolvent unless it could raise several hundred million dollars in new financing.
> d. Duberstein and Kingsley were primarily relying on OMC's assets, rather than investor-provided capital contributions, to pay for technological improvements and other turnaround costs.
> e. OMC's new technology could not reliably and sufficiently reduce engine emissions, which had to be accomplished before OMC could introduce new boat engine products and regain market share.

(Am. Compl. ¶ 30.)

Bors alleges that the defendants' statements and omissions materially understated the risks of rolling her phantom shares into restricted shares of the new OMC stock, which purported to guarantee a minimum payment of $18 per share, plus interest at six percent, accruing from September 12, 1997. (Am. Compl. ¶ 31.) Furthermore, the defendants' statements and omissions induced Bors to exchange her phantom shares for new restricted shares of OMC. (Am. Compl. ¶ 32.) In December 2000, OMC declared bankruptcy. (Am. Compl. ¶ 7.) This

6

rendered Bors' restrictive shares, obtained in lieu of payment on the phantom shares, worthless. (*Id.*) Bors claims a loss of $180,000, the value of the phantom shares, caused by the defendants' statements and omissions. (Am. Compl. ¶ 34.)

## DISCUSSION

The defendants seek dismissal of Bors' Amended Complaint on grounds that Bors has failed to plead fraud with the level of particularity required by Rule 9(b) and has failed to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). Because Bors' allegations do not state a claim under Rule 12(b)(6), the court will not consider defendants' arguments under Rule 9(b).

In her Amended Complaint, Bors brings forth theories of fraud by omission and promissory fraud.[1] In Illinois, the elements of fraud by omission are (1) concealment of a material fact, (2) with the intent to deceive, and (3) that the plaintiff was unaware of the concealed fact and would have acted differently had the plaintiff known of it. *Security Ctr. v. AT&T*, No. 94 C 6707, 1995 WL 307267, at *8 (N.D. Ill. 1995); *Farm Credit Bank of St. Louis v. Isringhausen*, 210 Ill. App. 3d 724, 732, 569 N.E. 2d 235, 240 (1991). Additionally, the party omitting or concealing the material fact must have had the opportunity and duty to speak. *Id.* Defendants seek dismissal of the Amended Complaint on grounds that they had no duty to speak to Bors.

---

[1] In Bors' response to defendants' motion, she attempts to add a claim for "opportunistic advantage" in footnote 2. "Opportunism" arises in contract law either when one party attempts to wring an unfair advantage from another party obligated to perform first, or when one party tries to take advantage of the other in a way that could not have been contemplated at the time of drafting. *Industrial Representatives, Inc. v. CP Clare Corp.*, 74 F.3d 128, 130 (7th Cir. 1996). Because the defendants did not enter into a contract with Bors in their individual capacities, the court will not consider this attempt to raise a claim.

7

In Illinois a party generally has a duty to speak only in two circumstances. First, a party would have a duty to speak when they have a fiduciary relationship with the other party. *Neptuno Treuhand-Und Verwaltungsgesellschaft MBH v. Arbor*, 295 Ill. App. 3d 567, 573, 692 N.E.2d 812, 817 (1998). Since Bors has not alleged a fiduciary relationship between herself and the defendants, there is no duty to speak on this ground.

A duty to speak may also arise when the "defendant's acts contribute to the plaintiff's misapprehension of a material fact and the defendant intentionally fails to correct [the] plaintiff's misapprehension." *Soranno v. New York Life Ins. Co.*, 96 C 7882, 2000 WL 748145, at *5 (N.D. Ill. May 31, 2000) (citing *Coca-Cola Co. Foods Div. v. Olmarc Packaging Co.*, 620 F. Supp. 966, 973 (N.D. Ill. 1985)). However, in this case, the statements and alleged omissions of Jones and Hines did not create a duty to speak on this ground for two reasons. Initially, the statements referred to future events, specifically the defendants' five-year plan to turn around OMC that they expected to culminate in an initial public offering of OMC stock at $50 or more per share. Statements that relate to contingent events, expectations or probabilities, rather than present facts, will not support claims of fraud under Illinois law. *Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1298 (7th Cir. 1993); *accord Ziskin v. Thrall Car Mfg. Co.*, 106 Ill. App. 3d 482, 487, 435 N.E. 2d 1227, 1231 (1982) (a representation of future profitability is an opinion of future occurrence, and without more, not actionable). Therefore, the statements of Jones and Hines at the February 3 meeting, which all related to future events and expectations, did not create a duty to speak.

Second, the statements and omissions by Jones and Hines also did not create a duty to speak based on the UGA Bors entered into. In that agreement Bors acknowledged and agreed

8

that neither OMC, nor its directors and officers, had "any duty or obligation to disclose to [Bors] any material information regarding the business of [OMC] or affecting the value of the stock," including any plans to make a public offering of its stock. (Am. Compl. Ex. A ¶ 14.)[2] Bors was not justified in relying on oral statements made prior to her execution of the UGA and thus, even if the statements created misapprehension, the defendants had no duty to speak. *See Carr* v. *CIGNA Securities, Inc.*, 95 F.3d 544, 547 (7th Cir. 1996) (stating that a fraud claim based on oral statements is barred when the claimant was also provided with a written statement contradicting the oral statements).

Bors cites *Byczek* v. *Boelter Cos., Inc.*, 264 F. Supp. 2d 720 (N.D. Ill. 2003), in support of her Amended Complaint, but the facts in *Byczek* are quite different from this case. In *Byczek*, unlike in the instant case, the plaintiff alleged a scheme to fraudulently misstate and conceal the net worth of his company. 264 F. Supp. 2d at 722. These misrepresentations and omissions were of current financial conditions, not predictions of future performance. *Id.* As such, the misrepresentations differed from Jones' and Hines' predictions that the new management could turn around OMC in three to five years, culminating in an initial public offering. Bors also relies on *Blanchard* v. *Edgemark Fin. Corp.*, No. 94 C 1890, 1999 WL 59994 (N.D.Ill. Feb. 3, 1999) and *Security Ctr. Inc.*, 1995 WL 307267, to support her contention that the defendants owed her a duty to speak and breached that duty. These cases, however, do not support her position.

---

[2]The court considers the UGA on this motion to dismiss because it is attached to Bors' Amended Complaint. Fed. R. Civ. Proc. 10(c); *see, e.g., Tierney* v. *Vahle*, 304 F.3d 734, 738 (7th Cir. 2002); *Beanstalk Group, Inc.* v. *Am Gen. Corp.*, 283 F.3d 856, 858 (7th Cir. 2002).

9

*Blanchard* is a Rule 10b-5 federal securities claim and contains no state fraud claims.[3] 1999 WL 59994 at *3. *Security Center* does state that a "special or fiduciary relationship will create a duty to speak," but Bors' Amended Complaint does not indicate what "special" relationship exists in the case at bar. Thus, based on all of the above, Bors has not adequately alleged a claim for fraudulent misrepresentation and this claim is dismissed.

Bors' second theory, promissory fraud, is a disfavored cause of action in Illinois because it is easy to allege and difficult to prove or disprove. *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992). Accordingly, a misrepresentation of intention to perform future conduct, even if made without a present intention to perform, is not actionable unless it is part of a pattern of fraudulent acts. *Speakers of Sports, Inc. v. ProServ, Inc.*, 178 F.3d 862, 866 (7th Cir. 1999); *HPI Healthcare Servs. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 168, 545 N.E. 2d 672, 682 (1989). In order to survive a motion to dismiss, the plaintiff must allege a "specific, objective manifestation of fraudulent intent - a scheme or device." *Bower*, 978 F.2d at 1012. Allegations of a pattern of broken promises and deceptions or a "particularly egregious" broken promise provide an indication of such a scheme to defraud. *J.H. Desnick v. American Broad. Cos.*, 44 F.3d 1345, 1354 (7th Cir. 1995). A particularly egregious broken promise is typified by one in which the breach occurs so soon after the promise was made that the court may infer that the promisor never intended to keep it. *See Zic v. Italian Gov't Travel Office*, 130 F. Supp. 2d 991, 995-996 (N.D. Ill. 2001) (citing *Pepper v. Marks*, 168 Ill. App. 3d 253, 258, 522 N.E. 2d 688, 691 (1988)).

---

[3]In federal securities law cases under Rule 10b-5, unlike under Illinois law, there is a duty to speak so as to render statements already made not misleading.

Bors' Amended Complaint does not support a claim for promissory fraud. She makes no explicit allegations of broken promises and only implicitly alleges that the defendants broke their promise that OMC would be "given enough time and cash" by Greenmarine Holdings to accomplish a turnaround. Bors makes no allegation of a series of broken promises and, even drawing all reasonable inferences in her favor, as is appropriate in considering a motion to dismiss, the court cannot characterize the defendants' breach of their promise to provide enough time and cash for the turnaround to be "particularly egregious." In fact, OMC did not declare bankruptcy, the immediate cause of Bors' loss, for over two years after the promise to provide time and money for the turnaround was made by Jones and Hines. Accordingly, Bors' claim for promissory fraud must also be dismissed.

Bors was previously given an opportunity to amend her Complaint after this court's previous memorandum opinion and order. Since this is her second attempt, the court is persuaded that Bors is not adequately able to state a claim. As such, the dismissal of the Bors' Amended Complaint shall be with prejudice.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss is granted [#15]. Bors' Amended Complaint is dismissed with prejudice. This case is terminated.

Enter: _____
JOAN HUMPHREY LEFKOW
United States District Judge

July 14, 2004